**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| GENESIS GLOBAL HOLDCO, LLC, GENESIS GLOBAL CAPITAL, LLC, and GENESIS ASIA PACIFIC PTE. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> DIGITAL CURRENCY GROUP, INC., BARRY SILBERT, MICHAEL KRAINES, MARK MURPHY, SOICHIRO "MICHAEL" MORO, DUCERA PARTNERS LLC, and MICHAEL KRAMER, <br><br> Defendants. | Civil Action No. 25-733-RGA |

## MEMORANDUM OPINION

Rudolf Koch, Robert L. Burns, Andrew L. Milam, RICHARD, LAYTON & FINGER, P.S., Wilmington, DE; Philippe Z. Selendy, Jennifer M. Selendy, Claire E. O'Brien, Laura M. King, SELENDY GAY PLLC, New York, NY,

    Attorney for Plaintiffs.

Kevin M. Coen, Jacob M. Perrone, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Marshall S. Huebner, Benjamin S. Kaminetzky, Daniel J. Schwartz, Matthew R. Brock, DAVIS POLK & WARDWELL LLP, New York, NY,

    Attorneys for Defendant Digital Currency Group, Inc.

Mark Hurd, Jacob M. Perrone, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Daniel Silver, Anthony M. Candido, John P. Alexander, CLIFFORD CHANCE US LLP, New York, NY,

    Attorneys for Defendant Barry Silbert.

Patricia L. Enerio, Brendan Patrick McDonnell, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, DE; Marcus Asner, Christian Schultz, Michael Krouse, Tyler Fink, Kodjo Kumi, ARNOLD & PORTER KAYE SCHOLER LLP, New York, NY,

    Attorneys for Defendant Soichiro "Michael" Moro.

1

Kevin M. Coen, Jacob M. Perrone, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Jeffery H. Knox, Karen M. Porter, SIMPSON THACHER & BARTLETT LLP, Washington, D.C.; Peter E. Kazanoff, SIMPSON THACHER & BARTLETT LLP, New York, NY,

    Attorneys for Defendant Mark Murphy.

Daniel M. Silver, MCCARTER & ENGLISH, LLP, Wilmington, DE; Jessica Kaufman, Janie C. Buckley MORRISON & FOERSTER LLP, New York, NY,

    Attorneys for Defendants Ducera Partners, LLC and Michael Kramer.

Stephen B. Brauerman, Emily L. Skaug, BAYARD, P.A., Wilmington, DE; Richard P. Donoghue, Ari Berman, PILLSBURY WINTHROP SHAW PITTMAN LLP, New York, NY,

    Attorneys for Defendant Michael Kraines.

March 25, 2026

2

ANDREWS, U.S. DISTRICT JUDGE:

## I.   BACKGROUND

Plaintiff Genesis Global Holdco LLC is organized under the laws of Delaware and serves as the parent company for the two other Plaintiffs. (D.I. 1-1, Ex. A at ¶¶ 23–25). Plaintiff Genesis Global Capital LLC is organized under the laws of Delaware (*id.* at ¶ 24), and Plaintiff Genesis Asia Pacific PTE. Ltd. is incorporated in Singapore (*id.* at ¶ 25). New York is the primary place of business for all three Plaintiffs. (*Id.* at ¶¶ 23–25). Together, Plaintiffs form "Genesis," a former cryptocurrency lending and borrowing platform. (D.I. 5 at 4-5).

Genesis was founded by Defendant Barry Silbert and was wholly owned by Silbert's venture capital holding company, Digital Currency Group, Inc. ("DCG"). (D.I. 1-1, Ex. A at ¶ 28). DCG is incorporated in Delaware and has a primary place of business in New York. (*Id.* at ¶ 27). Along with Silbert, Genesis was managed by Defendants Michael Kraines, Mark Murphy, and Genesis's former CEO Soichiro "Michael" Moro. (*Id.* at ¶¶ 1, 28–31). Defendant Ducera Partners is a financial advising firm that served Defendant DCG. (*Id.* at ¶ 32). Ducera is organized under the laws of Delaware and was co-founded by Defendant Michael Kramer. (*Id.* at ¶¶ 32–33). Together, the two entities and five individuals are "Defendants."

Genesis filed for bankruptcy on January 19, 2023. (*Id.* at ¶ 1). Genesis argues its financial uncertainty and ultimate bankruptcy was a result of Defendants' actions. (D.I. 5 at 5–7). Genesis's bankruptcy plan (the "Plan") was confirmed on March 17, 2024, with an effective date of August 2, 2024. (*Id.* at 7). Under the Plan, Genesis retained the right to bring certain causes of action. (*Id.*). Genesis brought the current action in the Delaware Court of Chancery for breach of fiduciary duty, two causes of aiding and abetting breach of fiduciary duty, civil conspiracy, unjust enrichment, fraud, negligent misrepresentation, and a declaratory judgment regarding alter ego.

3

(D.I. 1-1, Ex. A at ¶¶ 216–365).  Genesis seeks monetary damages, in-kind damages, an equitable trust, disgorgement of DCG's profits, and a declaratory judgment that Genesis was the alter ego of DCG.  (*Id.* at ¶¶ 366–73).  Six days after filing the Court of Chancery action, Genesis filed an adversary proceeding in the Southern District of New York Bankruptcy Court (the "Adversary Proceeding").[1]  The Adversary Proceeding contains claims for preferential capital transfers, voidable transfers, fraudulent transfers, recovery of property, and disallowance of claims against a number of defendants, including DCG, Silbert, and Kramer.  (Adv. Pro. No. 25-01097 (Bankr. S.D.N.Y.), D.I. 1).  Defendants timely removed the Court of Chancery action to this Court.[2]  (*Id.*).

Before me are Genesis's Motion to Remand (D.I. 4) and Defendants' Motion to Transfer Venue (D.I. 18).  I have reviewed the parties' briefing for the motion to remand (D.I. 5, 26, 34, 47, 52) and motion to transfer venue (D.I. 19, 28, 36).  For the reasons explained below, Genesis's Motion to Remand is denied, and Defendant's Motion to Transfer is granted.

## II.  LEGAL STANDARD

### A. Motion to Remand

Upon removal of an action to federal court, a plaintiff may challenge such removal by moving to remand the case back to state court.  28 U.S.C. § 1447(c).  Removal provisions "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (internal citations omitted).  The party seeking removal bears the burden to establish federal jurisdiction. *See Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

---

[1] *Genesis Glob. Cap., LLC v. Digital Currency Grp., Inc.*, Adv. Pro. No. 25-01097 (Bankr. S.D.N.Y. filed May 19, 2025).  The Adversary Proceeding is ongoing with pending motions filed in 2026.

[2] Defendant Digital Currency Group filed the removal.  (D.I. 1).  All other Defendants consented to the removal (D.I. 1-1, Exs. B–F).

"Our Constitution divides powers between the national government and the states. Powers not delegated to the national government remain with the people in the states." *Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393, 400 (3d Cir. 2021). "Under 28 U.S.C. § 1441(a), a defendant may remove a civil action to federal court only if the plaintiff could have originally filed the action in federal court. If the parties are not diverse, the complaint must satisfy federal-question jurisdiction." *Maglioli*, 16 F.4th at 406 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (other citations omitted)). Federal question jurisdiction grants the district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. For bankruptcy cases, "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

### B. Motion to Transfer

In general, a district court may, for the convenience of parties and witnesses, "transfer any civil action to any other district or division where it might have been brought" if transferring would be "in the interest of justice." 28 U.S.C. § 1404(a). In bankruptcy cases, "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. "The analysis under either section is essentially the same, turning on the same issues of the interest of justice and the convenience of the parties, except that section 1412 does not require that the action could have been brought in the transferee district." *In re Welded Constr., L.P.*, 609 B.R. 101, 118 (Bankr. D. Del. 2019) (internal quotations omitted). "The burden of establishing the need for transfer . . . rests with the movant," and "the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citation omitted).

A court must determine whether the non-exhaustive list of public and private interest factors set forth in *Jumara* favors transfer. *Id.* at 879–83. To prevail, the movant must show that "the balance of convenience of the parties is strongly in favor of transfer." *Deloitte Consulting LLP v. Sagitec Solutions LLC*, 692 F. Supp. 3d 421, 438 (D. Del. 2023) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)) (internal quotations omitted). The private interests include:

> (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Jumara*, 55 F.3d at 879 (citations omitted). The public interests include:

> (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted).

## III.    DISCUSSION

Genesis's motion to remand involves a dispute regarding this Court's subject matter jurisdiction. Thus, I begin by addressing the motion to remand.

### A. Genesis's Motion to Remand

Genesis argues that removal was improper because the Court does not have subject matter jurisdiction to hear the case. (D.I. 5 at 9–14). Genesis argues that, even if there were subject matter jurisdiction, mandatory abstention under 28 U.S.C. § 1334(c)(2) would require remand. (*Id.* at 14–17). In the alternative, Genesis argues that the case should be remanded based on permissive abstention or equitable grounds.

## 1.  Subject Matter Jurisdiction

Defendants argue that 28 U.S.C. § 1334(b) provides this Court with subject matter jurisdiction because the issues are related to bankruptcy jurisdiction.  (D.I. 1 at 1; D.I. 26 at 10–12).  Genesis argues that there is not a close nexus between this dispute and the prior bankruptcy case, and the bankruptcy case thus does not create jurisdiction for this court.   (D.I. 5 at 9–14).

"[D]istrict courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b). However, "a bankruptcy court's 'related to' jurisdiction cannot be limitless," and "the scope of bankruptcy court jurisdiction diminishes with plan confirmation."  *In re Resorts Int'l, Inc.*, 373 F.3d 154, 164–65 (3d Cir. 2004) (internal quotation omitted).  Despite the diminished scope, "[11 U.S.C.] § 1142(b) assumes that post-confirmation jurisdiction exists for disputes concerning the consummation of a confirmed plan, [and] 28 U.S.C. § 1334 remains the source of this jurisdiction." *Id.* at 165.  For determining "related to" jurisdiction, "the 'close nexus' test applies in all disputes raised post-confirmation, regardless of when the conduct alleged in the complaint occurred." *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 265–65 (3d Cir. 2007).  As non-exclusive examples, "there is a close nexus to the bankruptcy plan . . . when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan." *Resorts Int'l,* 373 F.3d at 168–69.

The Disclosure Statement for the Plan highlights its "key components," including "[t]he funding of a Litigation Reserve that allocates a fixed amount of funds to enable the pursuit of litigation of any Retained Causes of Action." (D.I. 27-1, Ex. F at 2–3).  Genesis's first "Plan Supplement" outlines the retained causes of action. It states:

> The Debtors and the Wind-Down Debtors expressly reserve all Causes of Action
> that may be brought by or on behalf of the Debtors, the Wind-Down Debtors, their

> Estates, or other authorized parties in interest against any DCG Party (including DCG and Barry Silbert) or against Ducera LLC and/or its current or former employees, directors, officers, equity holders, and agents (including [redacted]) and related parties, including claims for alter ego, preference, fraudulent conveyance, breach of fiduciary duty, equitable subordination, recharacterization, and improper setoff, breach of contract, and claims sounding in fraud or aiding and abetting fraud.

(D.I. 27-1, Ex. E at 11). This retention provision includes all Defendants and actions in the current case.

This Disclosure Statement "specifically identifies the claims against the defendants as an asset to be liquidated and distributed to creditors." *In re Insilco Techs., Inc.*, 330 B.R. 512, 525 (Bankr. D. Del. 2005); *In re MPC Computers, LLC*, 456 B.R. 384, 394 (Bankr. D. Del. 2012). In cases such as this where "the Plan specifically describes an action over which the Court had 'related to' jurisdiction pre-confirmation and expressly provides for the retention of such jurisdiction to liquidate that claim for the benefit of the estate's creditors, there is a sufficiently close nexus with the bankruptcy proceeding to support jurisdiction post-confirmation." *In re AstroPower Liquidating Trust*, 335 B.R. 309, 325 (Bankr. D. Del. 2005).

The Disclosure Statement explains that "the most valuable Distributable Assets are the estates' claims against the DCG Parties." (D.I. 27-1, Ex. F at 119). This statement provides notice "as to the importance of this . . . litigation." *Insilco Techs.*, 330 B.R. at 525. The identification of this litigation and its specific role limits the scope of potential post-confirmation jurisdiction, preventing the issue that "jurisdiction would be unlimited if the potential gain or loss of assets alone was sufficient." *In re Fairchild Corp.*, 425 B.R. 525, 531 (Bank. D. Del. 2001). Thus, the "[Plan documents] clearly contemplated this proceeding as a means of implementing the Plan." *MPC Computers,* 456 B.R. at 392–93.

The Plan identified specific causes of action against specific defendants over which to retain jurisdiction. With this retained jurisdiction, the Plan identified this litigation as a major asset

necessary for implementing the Plan. This is close nexus to the "implementation, . . . execution, [and] administration of [the] confirmed plan." *Resorts Int'l*, 373 F.3d at 168–69. Contrary to Genesis's arguments (D.I. 5 at 12), the Third Circuit has recognized that state common law claims may fall under "related to" jurisdiction. *See In re Essar Steel Minn., LLC*, 47 F.4th 193, 197 (3d Cir. 2022). Thus, there is a close nexus between the claims in this case and the bankruptcy proceeding.

This Court has "related to" jurisdiction under 28 U.S.C. § 1334(b).

### 2. Mandatory Abstention

Genesis argues that even if "related to" jurisdiction were to exist, mandatory abstention would bar this Court from hearing the case. (D.I. 5 at 14–17).

Mandatory abstention is set out in 28 U.S.C. § 1334(c)(2) which states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Thus, a district court must abstain from exercising "related to" jurisdiction when five requirements are met:

> (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is 'related to' a case under title 11, but does not 'arise under' title 11 and does not 'arise in' a case under title 11, (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action 'is commenced' in a state forum of appropriate jurisdiction; and (5) the action can be 'timely adjudicated' in a state forum of appropriate jurisdiction.

*Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006).

Defendants argue that mandatory abstention only applies to cases filed before bankruptcy. (D.I. 26 at 13). There is a split of authority on this argument. Since I decide the mandatory

9

abstention issue favorably to Defendants on other grounds, I do not have to decide the timing issue, and I decline to do so.

Defendants argue that Genesis waived its right to seek mandatory abstention by agreeing in a forum selection clause in a promissory note to litigate the claims underlying this action in New York. (D.I. 26 at 13). A "valid forum selection clause[] entered into by [the plaintiff] constitute[s] a waiver of any right to mandatory abstention under section 1334(c)(2)." *Street v. The End of the Road Trust*, 386 B.R. 539, 547 (D. Del. 2008). In a footnote, Genesis responds with a two-sentence argument that the promissory note containing the forum selection clause may not be enforceable. (D.I. 34 at 8–9 n.8). Genesis does not provide any citations to evidence, prior filings, or directly related cases to support its argument. (*Id.*). "[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997). Thus, Genesis has waived any unenforceability argument relating to mandatory abstention.

Genesis argues that the forum selection clause does not apply to the claims in this case because the claims are not related to the meaning of the promissory note or the contractual relationship the note created. (D.I. 34 at 8). Section 2.2 of the promissory note starts with two sentences. (D.I. 27-1, Ex. H § 2.2). The first states: "This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York." (*Id.*). The second states that the parties[3] "submit to the exclusive jurisdiction of the State and Federal courts located in the State of New York." (*Id.*). The first sentence is a choice of laws provision. The second

---

[3] The promissory note was for a loan from Defendant DCG to Plaintiff Genesis. (D.I. 1-1, Ex. A at ¶ 14). Genesis argues that Defendant Moro signed the promissory note on behalf of Genesis. (*Id.* at ¶ 15). Genesis argues that Defendants Ducera and Kramer assisted DCG in the creation of the promissory note. (*Id.*). Genesis discusses all Defendants as participating in "major fraud" related to the execution of the promissory note. (*Id.* at ¶ 14).

10

sentence is a forum selection agreement. The forum selection agreement does not contain any indication that it is limited to contract interpretation. I therefore understand the forum selection clause to apply to all disputes involving the promissory note.

The claims at issue in this case all involve the promissory note, including its negotiation, signing, and impact. (*See* D.I. 1-1, Ex. A at ¶¶ 219, 234, 226, 241, 255–56 (First Cause of Action), ¶¶ 266–68 (Second Cause of Action), ¶¶ 275, 277 (Third Cause of Action), ¶ 288 (Fourth Cause of Action), ¶¶ 292, 298, 304, 309 (Fifth Cause of Action), ¶¶ 326, 329, 332 (Sixth Cause of Action), ¶¶ 344, 346, 349, 352 (Seventh Cause of Action), ¶ 356 (Eighth Cause of Action)). With the claims at issue in this case all directly involving the promissory note, the forum selection clause applies. Genesis waived mandatory abstention for the claims in this case by agreeing to the forum selection clause.

### 3. Equitable Grounds or Permissive Abstention

Genesis argues that, in the alternative, the Court should remand this case based on equitable grounds or permissive abstention. (D.I. 5 at 17–20).

A district court "may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). Similarly, "in the interest of justice, or in the interest of comity with State courts or respect for State law," a district court may "abstain[] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). These two statutory provisions create the power to remand based on equitable grounds or permissive abstention. The "factors to be considered when deciding to abstain . . . are identical to those relevant to equitable remand." *In re Federal-Mogul Global, Inc.*, 282 B.R. 301, 314 (Bankr. D. Del. 2002). Courts in this district have used "the following non-exhaustive factors" to determine if equitable remand or permissive abstention are appropriate:

11

1.    the court's duty to decide matters properly before it;
2.    plaintiff's choice of forum as between state and federal courts;
3.    nature of the claim or claims, that is, whether purely state law matters which could be better addressed by the state court are involved;
4.    prejudice to involuntarily removed parties;
5.    comity considerations;
6.    economical and/or duplicative use of judicial resources[;] and
7.    effect a remand decision would have on the efficient and economic administration of the estate.

*Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 646 (D. Del. 2011).

Genesis argues that all seven factors are advanced by remanding the case. (D.I. 5 at 17–20). Genesis groups the factors into three sets.

### a. Factors One, Two, Three, and Five

Genesis argues that it brought this case in Delaware state court because of the case's focus on Delaware law. Specifically, Genesis chose to bring the case in the Court of Chancery due to that court's unique ability to adjudicate matters of corporate affairs. (*Id.* at 18). Genesis argues that the Court of Chancery is best equipped to handle equitable claims raised under Delaware law and that Delaware has a strong interest in adjudicating claims arising under its laws. (*Id.* at 19). Genesis argues that remand would allow the court most familiar with Delaware business law to oversee the claims and set important precedent concerning fiduciary duties in the nascent cryptocurrency industry to prevent future abuse of Delaware law. (*Id.*). Thus, Genesis argues, remand would advance factors one, two, three, and five.

Defendants respond by arguing that Genesis's forum preference carries little weight due to the related bankruptcy proceedings and the agreement to litigate certain actions in New York. (D.I. 26 at 18). Defendants argue that this dispute is not limited to Delaware law, and the Delaware law at issue is not novel or complex. (*Id.* at 18–19).

In addition to any impact the choice of laws provision in the promissory note may have, one of the Plaintiffs, Genesis Asia Pacific, is not incorporated in Delaware (D.I. 1-1, Ex. A at ¶

16) and many of the actions underlying the claims in this case likely occurred outside of Delaware (*id.* at ¶¶ 23–27). As such, the disputes in this case are likely not limited to Delaware law.[4] Thus, factor one, the court's duty to decide the matters in this case, factor three, the presence of only one state's laws, and factor five, comity, all favor litigation in federal courts due to the likely involvement of multiple states' laws in this dispute.

I do not believe that factor two, Genesis's preference between state and federal court, carries much weight in this particular case. Genesis agreed to a forum selection provision that covers the claims, or at least important parts of the claims, at issue in this case. The forum selection clause allows Genesis to bring these disputes in either state or federal court in New York. (D.I. 27-1, Ex. H § 2.2). The forum selection clause does not permit these claims to be brought in Delaware. Had Genesis preferred to avoid litigating in federal court, it could have brought the claims in New York state court where the forum selection clause would have permitted all aspects of the claims to be heard. Thus, factor two, Genesis's forum preference, is neutral.

### b. Factors Four and Six

Genesis argues that the Chancery Court is better equipped to quickly and fairly handle the disputes at issue in this case. On this basis, Genesis argues that factors four and six favor remand. (D.I. 5 at 20). Defendants respond that factor four is not advanced by remand because Genesis is "at home" in the bankruptcy court and thus will not be prejudiced by litigating this case there. (D.I. 26 at 19). Defendants argue that litigating this case in bankruptcy court advances factor six

---

[4] Although the parties have briefed the impact of the forum selection clause and potential role of other state law, the parties have not fully briefed and argued which law applies to which parts of this dispute. Thus, while I find that it is likely non-Delaware law will be involved, I do not attempt to determine the applicable law for each issue.

by preventing duplicative judicial decisions and retaining litigation in the court familiar with the underlying facts. (*Id.*).

Genesis's prejudice argument is focused specifically on the prejudice that may come from a delay in federal court. (D.I. 5 at 20). The Court of Chancery is known for the quick resolution of corporate matters. However, this case is likely to involve an extensive factual review and the evaluation of non-Delaware law. Litigation in the Southern District of New York Bankruptcy Court may eliminate some of the strain related to factual review, involve state and federal law the court commonly handles, and prevent disputes related to the forum selection clause. Thus, I find that factor four, the prejudice to involuntarily removed parties, is neutral.

Although the Court of Chancery is skilled at quickly handling disputes arising from Delaware law, this case involves a robust factual history that has already been developed in the original Bankruptcy proceeding and may continue to be developed in the Adversary Proceeding, in Southern District of New York Bankruptcy Court. It will save judicial resources to prevent multiple courts from having to review the extensive factual history of this case and duplicative factual or legal determinations with the ongoing Adversary Proceeding in the Southern District of New York Bankruptcy Court. Thus, factor six, the economic and/or duplicative use of judicial resources, weighs against remand.

### c. Factor Seven

Genesis argues that remand advances factor seven because litigating the case in the Court of Chancery will have a positive impact on estate administration by quickly resolving the issues. (D.I. 5 at 20). Defendants respond that it will cost the estate more money to litigate this case in the Court of Chancery while simultaneously litigating similar factual matters in the Adversary Proceeding in the Southern District of New York Bankruptcy Court. (D.I. 26 at 19). Defendants

14

argue that the actions in this case were specifically identified in the Plan, and any issues of Plan interpretation or implementation that may arise would be best addressed by the Southern District of New York Bankruptcy Court. (*Id.* at 19–20).

It is difficult to accurately guess the speed at which any court could resolve this case. Nor does a quicker resolution of this dispute in the Court of Chancery guarantee that estate resources are preserved through limiting litigation costs; expenses unrelated to the resolution speed of this dispute, such as transportation for non-Delaware parties or questions of bankruptcy law, may create additional expenses for the estate that would not arise in litigation in the Southern District of New York. Therefore, I do not believe that the potential for the estate to reduce costs through a quicker litigation of this dispute weigh heavily. While I do not believe the court adjudicating this dispute is likely to have issues of Plan interpretation arise, "consolidation of this matter with the bankruptcy case would avoid piecemeal litigation and ensure the centralization of all bankruptcy related matters in one venue, assuring the most efficient and economic administration of the debtor's estate." *Kurz*, 464 B.R. 635, 647. Thus, I find that factor seven, the impact on estate administration, is neutral.

Considering all the factors, I do not believe this case should be remanded pursuant to equitable remand or permissive abstention theories.

For the reasons explained above, Genesis's Motion to Remand is denied.

**B. Defendants' Motion to Transfer**

**1. Twenty-Eight U.S.C. § 1412 Applies**

First, Genesis argues that Section 1412 does not apply to this case because there is no "related to" jurisdiction. (D.I. 28 at 7–12). As addressed above, there is "related to" jurisdiction in this case.

Second, Genesis argues that Section 1412 does not apply to this case because it only permits the transfer of cases "arising under" title 11. (*Id.* at 12). To make this argument, Genesis relies on one case, *Multibank, Inc. v. Access Glob. Cap. LLC*, 594 B.R. 618, 621–22 (Bankr. S.D.N.Y. 2018). (D.I. 28 at 12). However, at least one district court in the Third Circuit has explicitly rejected the *Multibank* ruling, explaining "both the Third Circuit and district courts within the Third Circuit have found to the contrary." *Port Hamilton Refining & Trans., LLLP v. Limetree Bay Terminals, LLC*, 2024 WL 4347509, at *4 (D.V.I. Sept. 30, 2024). The Third Circuit has held that transfer under Section 1412 is "the proper method for transferring the related proceeding to the bankruptcy court." *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1212 (3d Cir. 1991). Genesis argues that *Maritime* is inapplicable because it was decided prior to *Resorts Int'l*. (D.I. 28 at 12). However, nothing in *Resorts Int'l* would change whether Section 1412 applies to "related to" jurisdiction, and courts in the Third Circuit have continued to apply *Maritime* after *Resorts Int'l*. *See JTH Tac, LLC v. Karisma Page*, 2024 WL 4900019, at *6 (M.D. Pa. Nov. 26, 2024); *Tang v. Citic Cap. Holdings Ltd.*, 2022 WL 6036573, at *5 (D.N.J. Oct. 7, 2022); *O'Brien v. Gladstone*, 2014 WL 2965948, at *3 (D.N.J. July, 1, 2014); *Miller v. Chrysler Group LLC*, 2012 WL 6093836, at *3 (D.N.J. Dec. 7, 2012); *Clark v. Chrysler Grp., LLC*, 2010 WL 4486927 (E.D. Pa. Nov. 5, 2010).

Thus, I find that Section 1412 applies to this case.

### 2. The Public and Private Factors Favor Transfer

Defendants argue that transfer is appropriate because it will preserve judicial resources and serve the convenience of the witnesses and parties. (D.I. 19 at 15–19). Genesis responds by arguing that its forum preference should be prioritized, that transfer does not serve the interests of

16

justice, and that litigating in Delaware will best serve the parties and witnesses.   (D.I. 28 at 14–20).

### a.  Factor One: Plaintiffs' Forum Preference

Genesis has demonstrated its strong preference for maintaining this action in Delaware. (D.I. 28 at 14–15).  While "the plaintiff's choice of venue should not be lightly disturbed," *Jumara*, 55 F.3d at 879, certain factors in this case weaken the weight of Genesis's preference.

As addressed above, the forum selection clause has shown Genesis's intention to litigate certain aspects of this dispute in New York.  Thus, Genesis's forum selection preference has already been exercised for certain claims.  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 64–65 (2013).  For the claims not governed by the forum selection clause, Genesis's "choice of forum is entitled to less deference" due to the related Bankruptcy case and Adversary Proceeding, both brought by Genesis, in the district which Defendant seeks to transfer this dispute.  *Miller v. Careminders Home Care, Inc.*, 2014 WL 1779362, at *4 (D.N.J. Apr. 30, 2014).  Thus, I find that *Jumara* factor one weighs only slightly against transfer.

### b.  Factor Two: Defendants' Forum Preference

Defendants have a clear preference for litigating this matter in the Southern District of New York. (D.I. 19 at 18).  Thus, *Jumara* factor two favors transfer.

### c.  Factor Three: Location of Events

Many of the events in dispute likely occurred in New York where all three entities comprising Genesis are headquartered, and all Defendants reside in or around. (*See* D.I. 1-1, Ex. A at ¶¶ 23–25, 27–33).  Aside from incorporation in Delaware and related procedural activities under Delaware law, Genesis has not argued that any events took place in Delaware. Thus, *Jumara* factor three favors transfer.

17

### d. Factor Four: Physical Location Convenience

In cases where all parties are Delaware businesses, "absent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001). Here, Plaintiff Genesis Global Holdco LLC, the parent company of the other two Plaintiffs, is organized under the laws of Delaware. (D.I. 1-1, Ex. A at ¶¶ 23–25). Plaintiff Genesis Global Capital LLC is organized under the laws of Delaware (*id.* at ¶ 24), and Plaintiff Genesis Asia Pacific PTE. Ltd. is incorporated in Singapore (*id.* at ¶ 25). Defendant DCG is incorporated in Delaware, and Defendant Ducera operated under the laws of Delaware. (*Id.* at ¶¶ 27, 32). The other five Defendants are all individuals who live in or around New York. (D.I. 19 at 19).

This is not a case where every party has organized or operated under the laws of Delaware. On the contrary, with all parties having a close connection to New York, litigation in New York is favored in an action related to a bankruptcy proceeding as it will minimize costs. *Kurz*, 464 B.R. at 649. Thus, *Jumara* factor four favors transfer.

### e. Factor Five: Convenience for Witnesses

Although it is likely that many witnesses are in New York, this factor is relevant "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. There is no indication that any witness would be unavailable in either New York or Delaware. *Jumara* factor five is neutral.

### f. Factor Six: Location of Records

As Genesis is headquartered in New York and Defendants are all based in New York, it is likely that any relevant records are located in New York. Neither party has argued that any relevant

18

documents exist in Delaware.   Nonetheless, as the records will be produced regardless of the forum, *Jumara* factor six is neutral.

### g.  Factor Seven: Enforceability of Judgment

Genesis argues that the Bankruptcy Court lacks constitutional authority to issue a final judgment on the common law claims in this case, meaning that transfer would waste judicial resources.  (D.I. 28 at 19).   After a bankruptcy court submits its proposed finding of fact and conclusion of law, the district court enters final judgment in the case.  *Stern v. Marshall*, 564 U.S. 462, 475 (2011).   This does not make the judgment any less final or enforceable.   While Genesis argues that this extra step extends litigation and adds an additional court (D.I. 28 at 19), the Bankruptcy Court's proposed finding of fact and conclusion of law prevents duplicative factual findings and contrary legal rulings.   Thus, I find *Jumara* factor seven to be neutral.

### h.  Factor Eight: Practical Considerations

*Jumara* places a consideration on the "practical considerations that could make the trial easy, expeditious, or inexpensive."  *Jumara*, 55 F.3d at 879.   This includes "the existence of related litigation."  *MCP IP, LLC v. Velocity Outdoor Inc.*, 795 F. Supp. 3d 510, 522 (D. Del. 2025).   As addressed above, this dispute is related to a bankruptcy proceeding in the Southern District of New York.   The related bankruptcy proceeding involves the determination and review of many of the same factual and legal issues as this case.   The Adversary Proceeding filed in the Bankruptcy Court involves the same set of Plaintiffs and three of the seven Defendants in this case.   Although different causes of action are brought against the Defendants in this case and the Adversary Proceeding, there are overlapping facts and issues in both proceedings.   "[S]uits involving the same legal and factual issues should be decided by one court and not permitted to proceed in two different courts simultaneously."  *Harris v. Lord & Taylor LLC*, 2019 WL 1854562, at *5 (D. Del.

Apr. 25, 2019) (quoting *Chrysler Capital Corp. v. Woehling*, 663 F. Supp. 478, 483 (D. Del. 1987)). "Transferring this proceeding to the same venue as the bankruptcy case would provide the most effective and economical use of judicial resources because that court is familiar with both the details of the bankruptcy case and [this action]." *Kurz*, 464 B.R. at 649. Thus, *Jumara* factor eight favors transfer.

### i. Factor Nine: Administrative Difficulties

Genesis states that it would rather litigate "in a court that is not also overseeing and necessarily prioritizing urgent and significant Chapter 11 restructurings." (D.I. 28 at 15). However, Genesis's concern does not address the effect of court congestion on either court to hear this case. While bankruptcy courts may prioritize issues in a different manner than a district court, bankruptcy courts regularly hear cases "related to" bankruptcy cases. As neither party addresses the relative caseload or congestion of either court, I find *Jumara* factor nine to be neutral.

### j. Factor Ten: Local Interest

"Delaware has a strong interest in adjudicating disputes among its corporate citizens." *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 760 (D. Del. 2012). However, "[Southern District of New York] also has an interest in this litigation, given the presence of all of the parties in that District, either through maintenance of offices" and the events at issue in this case. *Id.* Two of three Plaintiffs and two of seven Defendants are incorporated in Delaware or organized under Delaware law. (D.I. 1-1, Ex. A at ¶¶ 23–33). All other parties are either incorporated outside of Delaware or are individuals who do not reside in Delaware. (*Id.*). There are competing local interests in this case because the events underlying this action did not take place in Delaware and all parties involved reside or have a primary place of business in New York.

*See Harris v. Lord & Taylor LLC*, 2019 WL 1854562, at *5 (D. Del. Apr. 25, 2019).  Thus, I find that *Jumara* factor ten is neutral.

### k.  Factor Eleven: Public Policies of Fora

There is a public policy favoring transfer to a bankruptcy court where the "resolution could impact the distribution of the estate." *Kurz*, 464 B.R. at 650.  As previously addressed, this dispute had been identified as a major source of funding for the estate and administration of the Plan.  While there is a public policy interest favoring the litigation of Delaware corporate matters in Delaware courts, the policy "generally applies to the use of Delaware's state courts, and not to federal courts in the District of Delaware, because claims are resolved in the same manner and under the same Federal Rules of Civil Procedure and Evidence in every federal district court." *Deloitte Consulting*, 692 F. Supp. 3d at 438.  Thus, I find factor eleven to weigh slightly in favor of transfer.

### l.  Factor Twelve: Familiarity of Judges with Applicable State Law

Genesis argues that this dispute is best litigated in Delaware courts because it deals exclusively with Delaware state law. (D.I. 28 at 15).  Defendants respond by arguing that the Bankruptcy Court frequently applies matters of Delaware law.  (D.I. 36 at 9).  Defendants argue that New York law may apply to the common law claims based on where the events occurred. (D.I. 19 at 17–18).

The Southern District of New York Bankruptcy court regularly addresses these types of issues arising under Delaware law. *See, e.g., In re Genesis Global Holdco, LLC*, 660 B.R. 439, 509–11 (Bankr. S.D.N.Y. 2024); *In re Purdue Pharma L.P.*, 2024 WL 3023476, at *4–5 (Bankr. S.D.N.Y. June 14, 2024); *In re Firestar Diamond, Inc.*, 654 B.R. 836, 873–76 (Bankr. S.D.N.Y. 2023).  As there is a genuine dispute over which state law applies that cannot be determined at this

time, this factor is given less weight. *Miley v. Hatteras Funds, L.P.*, 2025 WL 3719680, at *5–6 (D. Del. Dec. 23, 2025). Thus, I find factor twelve to be neutral.

### m. Balance of *Jumara* Factors

The *Jumara* factors are mostly neutral. Factors 2, 3, and 8 significantly favor transfer. Factor 1, which would normally favor denying transfer, is less significant because of the forum selection clause. On balance, the factors as a whole strongly favor transfer. Thus, I grant Defendants' motion to transfer this case to the Southern District of New York.

The motion for leave to file a sur-reply (D.I. 47) is dismissed as moot. The various pending motions to dismiss (D.I. 55; D.I. 58; D.I. 59; D.I. 62; D.I. 65; D.I. 68) are dismissed without prejudice to refiling in the transferee court.

## IV.    CONCLUSION

An appropriate order will issue.